UNITED STATES of America ex rel. Edward McCOY, Appellant,

v.

Alfred T. RUNDLE, Superintendent, State Correctional Institution, Graterford, Pennsylvania.

No. 17932.

United States Court of Appeals Third Circuit.

Argued Oct. 23, 1969.

Decided Dec. 8, 1969.

---

John H. Lewis, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., for appellant.

James D. Crawford, Asst. Dist. Atty., Philadelphia, Pa. (Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, Dist. Atty., on the brief), for appellee.

Before KALODNER, STALEY and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM.

This is an appeal from an order denying a petition for a writ of habeas corpus. Relator is a state prisoner presently serving a sentence for burglary of a telephone booth. After an evidentiary hearing, the district court denied relief, but noted probable cause for appeal.

Relator makes two assertions. First, that failure to provide counsel at a preliminary hearing is a denial of due process. Second, that he was denied effective assistance of counsel both at trial and sentencing. The district court, in an unreported opinion, thoroughly analyzed each of these contentions and dismissed them. After careful examination of the record, we find no error.

The order of the district court will be affirmed.

FREEDMAN, Circuit Judge (concurring).

The able district judge invoked the doctrine we adopted in United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3 Cir. 1968), that prejudice is presumed to follow from the late appointment of counsel. He expressly found, however, that the Commonwealth had rebutted the presumption of prejudice. This finding, made after the district judge specifically considered the facts upon which relator relies, must be accepted under Rule 52 of the Federal Rules of Civil Procedure.

It seems to me that the situation revealed by the record makes desirable some additional comment. For this case is the product of a general practice in the representation of large numbers of indigents in criminal cases.

The requirement that indigents accused of crime be supplied with counsel at public expense does not create a standard superior to that enjoyed by fee paying clients in equivalent cases. It may well be that the vast experience of the Defender Association of Philadelphia, which represented relator at his trial, makes possible service of at least equal competency and with greater efficiency than that which fee paying defendants ordinarily receive. We do not, of course, have any legally recognizable facts beyond those in the record relating to this individual case. We therefore do not have the full details of the practice in the Defender's office. Nor do we have any basis for comparing it with the representation which fee paying defendants receive at the hands of individual lawyers practicing in the criminal courts. In the absence of detailed comparative information, it would be invidious to make extended comparisons. Nevertheless, I hope it will be useful to describe the circumstances of this case and to point out some of the questions which they may raise.

A representative of the Defender Association of Philadelphia interviewed relator and prepared an office file on his case ten days prior to trial. On the morning of trial a staff attorney met with relator and other clients in a group in the City Hall cellroom after having earlier reviewed their files. Only some of the group were singled out for individual discussion of their cases. The rest apparently received some general advice on their conduct in court. It is difficult to envisage what would have happened if any one of the defendants had come forward with new information requiring additional investigation or research. The failure to prepare the case sufficiently in advance of trial would hardly seem a likely basis for a continuance in a state

trial court in a great urban center like the City of Philadelphia, where a massive quantity of cases must be processed.

The staff lawyer was a man of experience. He was assigned to the case because the trial judge had taken offense at the conduct of a younger attorney who had originally been assigned to defend relator. In his anger the judge had handed out what counsel described as "really outrageous sentences." The more experienced lawyer was sent in, as he put it, as the "fireman" to "calm the judge down." At relator's sentencing a third lawyer was assigned; he confined himself to sidebar remarks to the judge.

There is a risk in all cases where a client is only one of many clients, even of an individual lawyer, that his rights may be submerged in the long-range needs of his representative. For example, one whose eye must envisage many other untried cases as he seeks to bank the fires of a judge's indignation is not likely to be able to stand up fully for the rights of a single client, whatever they may be and wherever they may lead him. The desire to appease an indignant trial judge who has already inflicted what seem excessively harsh sentences is magnified where an institutional law office represents many other defendants and is under pressure to subordinate the individual rights of one to the larger good of all.

The modern trend toward larger law firms, both private and public, diminishes the completeness of a client's relationship with an individual legal representative. Since the courts must operate impersonally in their consideration of the case of the accused, the accused has the right, even in an increasingly institutional age, to look to those who represent him for some personal, individual attention.

Where clients pay for their services, the element of competition at the bar provides some inherent safeguard of individualized representation against institutional encroachment. Successful private practice also requires the good will of clients, and this affords some mitigation of the impersonality of a large institu-

tion. No such inherent safeguards protect the indigent, and it is therefore essential that the representation he is entitled to receive under Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), should not bear too unfavorable a comparison with that which private law firms afford their clients.

I feel bound by the findings of fact which the district judge arrived at as a reasoned conclusion after an evidentiary hearing. But I deem it important that in affirming the denial of habeas corpus in this case we should call attention to the need for a watchful interest in the practices inherent in the institutionalized representation of indigents.