**UNITED STATES ex rel. Freddie M. JOHNSON H–7496, Appellant,**

v.

**Robert L. JOHNSON, Superintendent.**

**No. 72–1104.**

United States Court of Appeals, Third Circuit.

Submitted Oct. 16, 1972.

Decided Jan. 16, 1973.

---

Freddie M. Johnson, pro se.

James D. Crawford, Deputy Dist. Atty., Philadelphia, Pa., for appellee.

Before GIBBONS and JAMES RO-SEN,* Circuit Judges, and LAYTON, District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

This is an appeal from an order denying a petition for habeas corpus. Petitioner Johnson is in custody on a Pennsylvania sentence of life imprisonment following a jury verdict of first degree murder growing out of a robbery. The conviction was affirmed by the Supreme Court of Pennsylvania. Commonwealth v. Johnson, 433 Pa. 34, 248 A.2d 840 (1969). Thereafter, in February of 1969, Johnson filed a petition under the Pennsylvania Post Conviction Hearing Act. A hearing on this petition was commenced on March 16, 1970, before Judge Edward J. Bradley of the Court of Common Pleas of Philadelphia County. Before that hearing concluded, Judge Bradley, for reasons to which reference will be made hereinafter, continued the case and ordered that another judge hear the matter. On May 27, 1970, a new hearing was held before Judge Theodore L. Reimel of the same court. On June 25, 1970, Judge Reimel entered an opinion and order dismissing the petition. The Pennsylvania Supreme Court affirmed without opinion. Commonwealth v. Johnson, 442 Pa. 634, 276 A.2d 304 (1971).

Thereafter, Johnson filed in the district court the petition from which this appeal results. In it he alleged two grounds for habeas corpus relief:

(1) that trial counsel in his murder trial was inadequate in neglecting to obtain the testimony of two witnesses, one of whom would have established an alibi and the other of whom would have impeached the Commonwealth's principal witness;

(2) that the Commonwealth made use of perjured testimony to secure his conviction.

Without holding an evidentiary hearing, on the basis of the state court rec-

* Judge Rosen participated, but died before the opinion was filed.

ord, the district court rejected both grounds and denied relief. Since both grounds were presented in the Pennsylvania Post Conviction Hearing Act proceeding there is no exhaustion issue. 28 U.S.C. § 2254(b). We affirm the district court's disposition of the second ground, but reverse and remand for an evidentiary hearing on the first.

■ At Johnson's trial in February, 1968, the Commonwealth produced as a witness one Stanley Braxton, who testified that he was an eyewitness to the robbery during which a victim was fatally shot. He identified Johnson as one of the two participants. In April, 1969, Braxton gave two written statements to Johnson's attorneys in which he recanted his trial testimony. The fact of this recantation was one of the grounds alleged in the Pennsylvania Post Conviction Hearing Act petition. At the first hearing before Judge Bradley, Braxton testified that the statements recanting his trial testimony were true. Judge Bradley at that point warned Braxton of the possible consequences of his testimony and asked if he desired the assistance of an attorney. When Braxton replied affirmatively, Judge Bradley continued the matter for the appointment of counsel and directed that the case be heard de novo before a different judge. At the de novo hearing before Judge Reimel, counsel for Johnson first introduced Braxton's two statements recanting his trial testimony. He then called Braxton. This time, however, Braxton testified that the recanting statements were false, that his trial testimony was true, that the false recanting statements were given at a time when he was confined in the same cell block with Johnson, and that Johnson threatened him. (May 27, N.T. 18–19). The hearing before Judge Reimel afforded ample opportunity for the development of the facts with respect to the use of perjured testimony. Judge Reimel found that the written recantations were the product of duress and hence unreliable. No evidence was offered tending to show that the Commonwealth knowingly allowed the use of perjured testimony at Johnson's trial, Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), or knowingly withheld any information which would tend to discredit Braxton as a witness, Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The state court determination after a hearing of the factual issues concerning Braxton's recanted recantation is fairly supported by the state court record. 28 U.S.C. § 2254(d). The district court correctly denied the petition for habeas corpus on this ground without an evidentiary hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

Turning to the first ground, the alleged inadequacy of counsel in neglecting to obtain the testimony of witnesses, our starting point is the holding in United States ex rel. Green v. Rundle, 434 F.2d 1112 (3d Cir. 1970), that it is a departure from the normal competency test announced in Moore v. United States, 432 F.2d 730 (3d Cir. 1970), for trial counsel to neglect to subpoena a witness whom his client claims would furnish an alibi. We said in Green that the petitioner in the habeas corpus proceeding would have the burden of showing that the missing evidence would have been helpful. Because the district court held no evidentiary hearing, Johnson had no opportunity to make such a showing.

■ The district court held that the state court record and findings were sufficient to foreclose Johnson on the competency of counsel issue because Judge Reimel found (a) that his counsel had actually tried to locate the witness, but without success; and (b) that Johnson had advised his counsel, not that the witness would establish an alibi, but merely that the witness resided in the same building and might be able to verify that Johnson was home asleep at the time of the robbery. The district judge conceded that " . . . these findings may represent somewhat of an overstatement of counsel's testimony . . . " They do indeed. In the first place, two witnesses were involved. One, named Willie

Davis, is the alleged alibi witness. Another, identified only as Pootsie, is claimed by Johnson to be in a position seriously to impair the credibility of Braxton, the only eyewitness. Braxton testified before Judge Reimel about the whereabouts of both witnesses. He placed Davis in police custody in City Hall during Johnson's trial in the same building. (May 27, N.T. 13). During the same hearing he placed Pootsie in Philadelphia. (May 27, N.T. 14). Johnson's trial counsel was asked no questions about Pootsie. Thus, the state court record is completely silent as to whether any efforts were made to locate this person. Johnson's trial counsel testified with respect to Davis:

"Q. Prior to Mr. Johnson's trial, did he ever tell you that a certain individual by the name of Willie Davis was guilty?

A. No.

Q. He never mentioned the name of Willie Davis as a possible alibi witness?

A. No, I do not recall the person. I would have to take a quick look through my notes. That name does not click with me at all.

As a matter of fact, I recall something—he told me, on the afternoon of the incident of the crime—that he was home. He was not feeling well. He was sleeping that entire afternoon. I asked him whether he had any corroborating witnesses who would testify to that effect. He had no witnesses.

Q. He did not tell you that Willie Davis had resided in the same building?

A. He may have mentioned someone that resided in the same building, but I was interested in securing witnesses who would know that he was home on this afternoon. He may have mentioned Willie Davis, but not as a corroborating witness.

Come to think of it—there was a name like that mentioned. He did not help the case out any but Willie Davis would not corroborate the fact that this defendant was home during those particular hours. I asked him for some corroborating witnesses.

Q. Did you make any attempt to check out whatever evidence Mr. Davis might have offered?

A. I was down there in prison to inquire about Willie Davis, but I could never locate him. That was part of my duty as Court-appointed Counsel. I wasn't able to find Willie Davis.

Q. Did you ever have occasion to see Mr. Davis?

A. I never met Mr. Davis." (May 27, N.T. 25–26).

Obviously trial counsel was told by Johnson that Davis was a potential witness for some purpose. Thus, this record, far from supporting the findings relied upon by the district court, is at best equivocal. Trial counsel's internally inconsistent testimony is insufficient to support a finding that Johnson said Davis could not afford an alibi. Reading the testimony in the light most favorable to the Commonwealth, Johnson said Davis *might* rather than *would* furnish helpful testimony. In either case normally competent representation required that the matter at least be explored. It was not. So far as the state court record discloses, no subpoena was issued, no inquiry was made to the police for assistance in locating Davis, no bench warrant was requested, and no continuance was requested and Davis was not interviewed. The state court record here was insufficient for the resolution of the precise competency of counsel issue discussed in United States ex rel. Green v. Rundle, *supra.* 28 U.S.C. § 2254(d)(3), (6), (8). Townsend v. Sain, *supra.*

The judgment of the district court will be reversed and the case remanded for a hearing on Johnson's claim that his trial counsel failed to afford him normally competent representation in his murder trial when he neglected to obtain the testimony of two witnesses.