**James BURSTON, Petitioner-Appellant,**

**v.**

**E. B. CALDWELL, Warden, Georgia State Prison, Respondent-Appellee.**

No. 72–3053.

United States Court of Appeals, Fifth Circuit.

May 14, 1973.

Wayne S. Hyatt, Atlanta, Ga., court appointed, for petitioner-appellant.

Arthur K. Bolton, Atty. Gen., Daniel I. MacIntyre, Atlanta, Ga., for respondent-appellee.

Before TUTTLE, THORNBERRY and DYER, Circuit Judges.

DYER, Circuit Judge:

In 1935, Burston and two other blacks were tried in the Superior Court of Fulton County, Georgia, on two counts of robbery and on one count of assault with intent to rob. Upon conviction, Burston was sentenced to 3 consecutive prison terms totaling 44 years: 12–20 years for robbery of $42.25, 3–4 years for the assault, and 20 years for robbery of $4.-30. After serving 20 months of his sentence, he escaped and remained at large for some 34 years, apparently leading a productive life. Burston was returned to Georgia custody in 1971, and subsequently filed a *pro se* habeas corpus petition.

At his post-conviction hearing before the Superior Court of Tatnall County, Georgia, Burston alleged: (1) that he was denied the assistance of counsel at his 1935 trial; (2) that if he had counsel, his counsel was ineffective; (3) that he did not receive an arraignment hearing; (4) that he was not tried by jury; and (5) that the grand and traverse juries were unconstitutionally composed. The Tatnall County court denied him habeas relief. Burston appealed and the Supreme Court of Georgia affirmed. Burston v. Caldwell, 1972, 228 Ga. 795, 187 S.E.2d 900.

Subsequently, Burston filed a habeas petition in the court below, alleging the same grounds for relief as he had urged in the Georgia courts. On the basis of the transcript of proceedings at the State evidentiary hearing and the State court's Findings of Fact and Conclusions of Law, the district court dismissed the petition. We reverse.

At his State habeas hearing, Burston testified that at the time of his trial in

1935 he did not have any money and "couldn't hire a lawyer." Although he conceded that immediately before the trial a lawyer did come to the detention cell where he and the two other co-defendants were being held, he maintained that the attorney was not his counsel since he had not hired him and nobody had "made him my lawyer." Burston also claimed that the lawyer never talked to him about the trial. "He just asked me if I was with the other boys. I said, 'yeah, they got us all for the same thing.' And he left and he talked with the other guys about twenty or thirty minutes." The printed indictment against the three defendants listed a lawyer as "Defendant's attorney" (singular possessive) without specification of which, or all, defendants were represented. Moreover, Burston argued that even if he was technically represented by a lawyer at his trial, his counsel was ineffective because of the lack of time and privacy for consultation and because of the lawyer's inadequate investigation. *See* Barker v. Wainwright, 5 Cir. 1972, 459 F.2d 8; Wedding v. Wingo, 6 Cir. 1972, 456 F.2d 245; Moore v. United States, 3 Cir. 1970, 432 F.2d 730; United States ex rel. Washington v. Maroney, 3 Cir. 1970, 428 F.2d 10. Had he had a reasonably thorough interview with counsel, Burston asserted, he could have given the attorney names of witnesses who could have established an alibi for him. In addition, according to Burston, the victim stated that he was robbed by three persons and he identified the other two men, but could not identify Burston as one of the assailants. Burston therefore claimed that if the counsel listed on the indictment did in fact represent all three defendants, his representation of Burston was in conflict with his representation of the other defendants because Burston's interests were at odds with those of the other two codefendants since they had been identified but Burston had not.

The only two witnesses who were present at the State habeas proceeding were Burston, who appeared in his own behalf, and the Classification Officer at the Georgia State Prison, who testified for the State concerning the contents of the indictments and official docket entries regarding Burston's 1935 conviction.

There were several conflicts between Burston's *pro se* petition and his testimony at the evidentiary hearing in Tatnall County, the most glaring of which was that in his petition he stated that he was found guilty by a jury whereas at the State court hearing he asserted that he could not remember being tried by a jury and did not see a jury in the court room, where he stayed only 15 minutes. Burston, unrepresented by counsel at the State hearing, explained that because he was uneducated, ignorant in legal matters, and indigent, he had to rely on the help of a fellow inmate to prepare his habeas petition and that, although he did not understand what the petition said too well, he signed it because the inmate-scriber had assured him that it was based on the official court records and was truthful. Finally, Burston explained that if there was any conflict between the allegations in the petition and his present testimony, what he was swearing to in court was the truth of what happened.

Despite the conflicts in Burston's story, he consistently maintained that the lawyer listed on the indictment did not represent him and, even assuming that the attorney did, he was ineffective. The only evidence which the State presented in opposition to Burston's verified petition and sworn testimony were the docket entries from his 1935 trial. The trial transcript was not introduced, nor was there any testimony from the attorney, jury foreman, or any other witness who was present at the trial. Admitting that it was unable to determine "what the truth of the case is," the Tatnall County court, nevertheless, held that none of Burston's constitutional rights had been denied and that he was then serving a legal sentence.

▪ The district court dismissed Burston's habeas petition without hold-

ing an evidentiary hearing and without obtaining a copy of the transcript from the original trial, instead relying solely on the transcript of the State post-conviction hearing. We agree with Burston's primary contention on appeal that this was error. The disputed facts were not resolved at the State hearing and the State court's factual determinations are not fairly supported by the record as a whole. We must, therefore, remand the case for further proceedings. Townsend v. Sain, 1963, 372 U.S. 293, 313, 83 S.Ct. 745, 9 L.Ed.2d 770; *see* Boyd v. Dutton, 1972, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755; Lujan v. United States, 5 Cir. 1970, 424 F.2d 1053.

> A District Court sitting in habeas corpus clearly has the power to compel production of the complete state-court record. Ordinarily such a record—including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents—is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings.

Townsend v. Sain, *supra* at 319, 83 S.Ct. at 760.

If, after reviewing the original trial transcript and all other evidence in the record, the district court determines that the evidence is insufficient to reach a decision in this case in accordance with the *Townsend* guidelines, or if the transcript of the original trial is unavailable altogether, then the court is directed to conduct a full evidentiary hearing. *See* Smith v. Beto, 5 Cir. 1972, 467 F.2d 1374.

■ ■ Although Burston's argument that the denial of assistance of counsel at the State habeas hearing constituted a denial of due process is without merit, the district court has the discretion under the Criminal Justice Act to appoint counsel for Burston for the federal evidentiary hearing, if one is held.

The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.