**UNITED STATES ex rel. George MANDRIER, Relator,**

v.

**Lowell D. HEWITT, Warden State Correctional Institution, Huntingdon, Pennsylvania, Respondent.**

**Civ. A. No. 75–70.**

United States District Court,
W. D. Pennsylvania.

Jan. 21, 1976.

George Mandrier, pro se.

John J. Hickton, Dist. Atty., Pittsburgh, Pa., for respondent.

## OPINION

McCUNE, District Judge.

Relator filed this pro se habeas corpus action alleging that he was denied effective assistance of counsel in the proceedings which resulted in the conviction challenged herein in violation of his constitutional rights under the sixth amendment made applicable to the states under the fourteenth amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

### I

### *Background*

Relator is presently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania, under sentence of 7½ to 15 years resulting from his conviction of armed robbery.[1] Mandrier was indicted on a bill containing counts of armed robbery, receiving stolen goods and violations of the Uniform Firearms Act. Following his plea of not guilty to all charges, relator waived a jury trial and was tried in the Court of Common Pleas of Allegheny County on May 25, 1971. At the close of the government's case relator's demurrers to the counts charging receipt of stolen goods and violation of the Uniform Firearms Act were sustained. He was found guilty of armed robbery after testifying in his own behalf.

Mandrier did not file post trial motions; nor did he take a direct appeal. However, he has complied with 28 U.S.C. § 2254(b)'s exhaustion of state remedies requirement, having petitioned for relief under Pennsylvania's Post Conviction Hearing Act (PCHA) 19 P.S. § 1180–1 *et seq.*

In his PCHA petition Mandrier alleged (1) that he had been denied his constitutional right to representation by compe-

---

1. Allegheny Court of Common Pleas, No. 3016 March Term, 1971.

tent counsel and (2) that state officials had obstructed his right to appeal.

Post conviction relief was denied without a hearing on January 15, 1973. Relator appealed dismissal of the PCHA petition to the Superior Court of Pennsylvania which remanded the case for an evidentiary hearing by per curiam order of June 6, 1973. That hearing was conducted on July 6, 1973, at which time relief was again denied upon a finding by the state court that the allegations in the petition were contradicted by the evidence adduced at the PCHA hearing. Relator again appealed to the Superior Court which affirmed dismissal of the PCHA petition on January 3, 1974. The Supreme Court of Pennsylvania subsequently denied allocatur.

Mandrier then filed the petition *sub judice*, in which he reasserts the same arguments presented in his PCHA petition. Upon receipt of the petition we directed the respondent to show cause why the writ should not be granted. At that time, we also requested the Clerk of Courts to obtain relator's state court records. Those records have been furnished to the court and include transcripts of both the trial proceedings and the PCHA hearing conducted on July 6, 1973.

In his answer to the petition the district attorney of Allegheny County has moved to dismiss the petition without a hearing, contending that the identical arguments raised here were fully presented and considered by the state courts at both the trial and appellate levels. The Commonwealth asserts that the state court properly decided against Mandrier on the basis of both state and federal law.

After a careful review of the state court records, it is our opinion that Mandrier should not be permitted to file post trial motions nunc pro tunc since we believe that he was not denied the effective assistance of counsel during the time for the filing of such motions. We reject his contention that he was denied the effective assistance of counsel at trial or prior thereto. Our reasons follow.

## II

### The Right to Counsel

The sixth amendment guarantees that a criminal defendant shall enjoy the right "to have the Assistance of Counsel for his defence." This guarantee was first interpreted by the Supreme Court to mean the *effective* assistance of counsel in *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Justice Sutherland, the author of the *Powell* decision, went beyond a formal requirement that counsel be appointed, holding that the trial judge's failure "to make an effective appointment of counsel" had resulted in the "denial of effective and substantial aid . . . [D]efendants were not afforded the right of counsel in any substantial sense." 287 U.S. at 53, 71, 53 S.Ct. at 58.

Eight years later, speaking through Justice Black, the Court held that "The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment." *Avery v. Alabama*, 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). The *Avery* court rested its holding on the fourteenth amendment since a state defendant was involved and held that the trial court's denial of a continuance requested by appointed counsel had not deprived the defendant of the effective assistance of counsel. On the facts of the case "his appointed counsel . . . have performed their 'full duty intelligently and well.'" 308 U.S. at 450, 60 S.Ct. at 324. In *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the court enforced the implication of *Avery* that an inadequate performance by counsel would render a conviction void. Basing its holding on the sixth amendment because a federal defendant was involved, the *Glasser* Court overturned the conviction of a defendant whose attorney was retained by a co-defendant with a potentially inconsistent defense. Three years later in *White v. Ragen*, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945), the Supreme Court held that a prima facie case for habeas relief was

stated where a state prisoner alleged that his appointed counsel failed to confer with him until the day of trial, refused to do anything for petitioner until he was paid and refused to call a witness petitioner had requested him to call.

More recently in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) the Supreme Court stated: "It has long been recognized that the right to counsel is the right to the effective assistance of counsel."

■ While it is therefore clear that the guarantee of assistance of counsel means the *effective* assistance of counsel, the courts have not established a uniform standard by which to gauge the effectiveness of the assistance of counsel called for by the sixth amendment. For example, in *United States ex rel. Maselli v. Reincke*, 383 F.2d 129 (2d Cir. 1967) the court said that in order to assume constitutional proportions

> "[A] lack of effective assistance of counsel must be of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice."

383 F.2d at 132.

In *Beasley v. United States*, 491 F.2d 687, 692–696 (6th Cir. 1974) the court stated the test in this manner:

> "We hold that the assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance." [2]

In *Moore v. United States*, 432 F.2d 730 (3rd Cir. 1970) (en banc) the Court of Appeals for the Third Circuit established a standard of "normal competency:"

> "Whether an indigent is represented by an individual or by an institution, he is entitled to legal services of the same level of competency as that generally afforded at the bar to fee-paying clients. *United States ex rel.*

*McCoy v. Rundle*, 419 F.2d 118, 120 (3rd Cir. 1970) (concurring opinion). In both cases, therefore, the standard of adequacy of legal services . . . is the exercise of the customary skill and knowledge which normally prevails at the time and place."

432 F.2d at 736. See also: *United States ex rel. Green v. Rundle*, 434 F.2d 1112 (3rd Cir. 1970); *United States v. Hines*, 470 F.2d 225 (3rd Cir. 1972); and *United States ex rel. Johnson v. Johnson*, 471 F.2d 264 (3rd Cir. 1973).

In *United States ex rel. Mathis v. Rundle*, 394 F.2d 748 (3rd Cir. 1968), the Court of Appeals for the Third Circuit held that an untimely appointment of counsel created a presumption that the defendant was prejudiced and shifted to the state the burden of showing the contrary. The *Moore* court, expressly overruling *Mathis* abandoned this presumption of prejudice in favor of a "totality of the circumstances" approach:

> "We believe it is preferable that the factual question whether the defendant received adequate assistance of counsel should not be enwrapped in the label of a presumption which itself floats adrift and first requires a preliminary decision on the uncertain question of what is a belated appointment without eliminating a full inquiry thereafter into the facts to determine whether the presumption has been overcome or rebutted. If it be said that this will cast the burden of proof on the defendant, the answer is that it applies to the lawyer the presumption of the regularity of his conduct and that it is but just that one who claims his counsel had inadequately represented him should have the burden of proving the charge." 432 F.2d at 735.

See *United States v. Varga*, 449 F.2d 1280 (3rd Cir. 1971).

---

**2.** See the collection of cases in Note, The Right to Counsel and the Neophyte Attorney, 24 Rutgers L.Rev. 379–87 (1970). See also *Garland v. Cox*, 472 F.2d 875 (4th Cir. 1972) (crit-

ical of the Third Circuit's approach in *Moore, infra*), *Burston v. Caldwell*, 477 F.2d 996 (5th Cir. 1973); *U. S. v. DeCoster*, 159 U.S.App. D.C. 326, 487 F.2d 1197 (1973).

In adopting the totality of the circumstances approach, the Court in *Moore* stated:

"What is a late appointment of counsel may in extreme circumstances seem evident, but the question necessarily involves a comparison of the time of the appointment with all the attendant circumstances, such as the gravity of the charge, the experience of appointed counsel, the extent of his knowledge and participation in similar cases, his opportunity for preparation and even what he may have been told by the defendant which may reduce the area of necessary preparation." 432 F.2d at 735.

Thus the Court instructed that in investigating a claim of ineffective assistance of counsel, an inquiry into the ability, experience and zeal with which counsel acted both at trial and in preparation[3] would be necessary.

While we are directed to investigate the adequacy of pre-trial preparation, that task is often an elusive and difficult one especially in cases such as this where memories have dimmed with the passage of time and no evidence exists to determine the degree of preparation. The problem is heightened by the fact that evidence of inadequacy of trial counsel will often be outside the trial record, in some cases precisely because counsel has been ineffective. *U. S. v. Benn*, 155 U.S. App.D.C. 180, 476 F.2d 1127 (1973). For example, where counsel has failed to conduct an investigation the record may be barren of mention of the witnesses he would have called or the defenses he would have raised had he done so. *Cf. United States ex rel. Maselli v. Reincke, supra.*

█ While the facts of *Moore* involved untimely appointment of counsel, the court made clear that the critical date is not the time when the defendant first sees his counsel but rather the time when the organization is appointed from which defense counsel comes. Therefore, where, as here, the Public Defender's Office was appointed to represent petitioner well in advance of trial there is no "untimely" appointment under *Moore*. Nevertheless, we believe that the standards set forth in *Moore* for gauging claims of ineffective assistance of counsel are applicable to the instant petition. Mandrier's claim will therefore be evaluated under the normal competency standard adopted in *Moore*.

Several other considerations merit brief discussion before we proceed to a consideration of the facts of this case. First, *Avery-Glasser* distinction between claims by state prisoners under the fourteenth amendment (Avery) and claims by federal prisoners under the sixth amendment is now a distinction without a difference in this circuit:

"While a distinction might be attempted between attacks on state convic-

---

**3.** The *Moore* Court recognized that

"[A]dequate preparation for trial often may be a more important element in the effective assistance of counsel to which a defendant is entitled than the forensic skill exhibited in the courtroom. The careful investigation of a case and the thoughtful analysis of the information it yields may disclose evidence of which even the defendant is unaware and may suggest issues and tactics at trial which would otherwise not emerge." 432 F.2d at 735.

In *United States ex rel. Hart v. Davenport*, 478 F.2d 203, 209–210 (3rd Cir. 1973) the court says:

"The right to counsel guaranteed by the sixth and fourteenth amendments contemplates the services of an attorney devoted solely to the interests of his client. The right to such untrammelled and unimpaired assistance applies both prior to trial in considering how to plead, *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), and during trial, *Glasser v. U. S.*, 315 U.S. 60, 70, 62 S.Ct. 457, 86 L.Ed. 680 (1942)."

And in *Beasley v. United States, supra*, the Court said:

"Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations (citations omitted) . . . . Defense counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a proper and timely manner." 491 F.2d at 696.

tions under the Fourteenth Amendment and those of federal convictions under the Sixth Amendment, we believe the increased recognition of the constitutional right to the assistance of counsel requires that the standard which prevails in federal cases under the Sixth Amendment should be applied equally to [the] state convictions, to which the same guarantee is made applicable by the Fourteenth Amendment under *Gideon v. Wainwright.* The standard of normal competency applies equally in each case."

*Moore, supra,* at 737.[4]

■ Second, the right to the effective assistance of counsel is of such a fundamental nature that the courts will refuse inquiry into the question of harmless error.

"The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

*Glasser v. United States, supra,* 315 U.S. at 76, 62 S.Ct. at 467. Thus if it is found that a criminal defendant was denied effective assistance of counsel, there is no room for case by case consideration of fairness. The ruling that the right is fundamental results in the establishment of a prophylactic rule, one which is to be generally observed in every case regardless of its particular circumstances:

"It is a judgment on the part of this Court that the probability of unfairness in the absence of a particular right is so great that denigration of the right will not be countenanced under any circumstances."

*Herring v. New York,* 422 U.S. 853, 867–868, 95 S.Ct. 2550, 2558, 45 L.Ed.2d 593 (J. Rehnquist, dissenting). Thus in

*Moore,* the court in referring to the standard of normal competency adopted therein stated:

"This standard also makes it clear that the ultimate issue is not whether a defendant was prejudiced by his counsel's act or omission, but whether counsel's performance was at the level of normal competency. That the client was prejudiced by a failure in performance is of course evidentiary on the issue."

432 F.2d at 737. But see *Geboy v. Gray,* 471 F.2d 575, 579 (7th Cir. 1973).

■ Finally, it should be remembered that normal competency does not require perfection:

"A retrospective examination of a lawyer's representation to determine whether it was free from any error would exact a higher measure of competency than the prevailing standard. Perfection is hardly attainable and certainly is not the general rule, especially in professional work where intuitive judgments and spontaneous decisions are often required in varying circumstances. The artistry of the advocate is difficult to judge retrospectively because the elements influencing judgment usually cannot be captured on the record. The kaleidoscopic range of possibilities often seems limitless, and it is proverbial that the finest ideas emerge on the way back from the courthouse. The advocate's work, therefore, is not readily capable of later audit like a bookkeeper's."

432 F.2d 736–37. What is required is normal and not exceptional representation.

With this standard of normal competency in mind, we now examine petitioner's claim that he was denied the effective assistance of counsel.

---

4. We note that some other courts have retained the distinction between claims by state prisoners and those by federal prisoners. See e. g., *Fitzgerald v. Estelle,* 505 F.2d 1334 (5th Cir. 1975) (en banc). The *Fitzgerald* case also distinguishes between claims under the Fourteenth Amendment where counsel was retained and counsel is court-appointed for purposes of the "state action" requirement of the Fourteenth Amendment. That distinction has also been abandoned in the Third Circuit. See *Moore, supra.*

## III

### Discussion

■ As previously mentioned, the issues presented by the petition now before the court have been previously considered in a proceeding under the Pennsylvania Post Conviction Hearing Act. An evidentiary hearing was conducted at which Mandrier was represented by counsel. At that hearing, Mandrier testified freely and without restraint. His trial counsel also testified with regard to the procedure he followed in this type of case, although he was unable to recall the Mandrier trial specifically. In our view, the PCHA proceeding afforded relator a fair and adequate hearing in the state court. Therefore, we conclude that no evidentiary hearing is required here. 28 U.S.C. § 2254(d); [5] *Townsend v. Sain* 372 U.S. 293, 313–319, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *United States ex rel. Davis v. Johnson*, 495 F.2d 335, 342 (3rd Cir. 1974).

However, we are obliged to carefully examine the record to ascertain if the relator has met his burden of proving counsel's failure to meet the level of normal competency. *United States ex rel. Davis v. Johnson, supra; United States v. Varga, supra; Moore v. United States, supra.* In this case relator must shoulder a heavy burden if he is to prevail since the findings of the state court are presumed to be correct absent a showing of one or more of the conditions set forth in 28 U.S.C. § 2254(d)(1)–(8), n. 5., *supra.*

■ It is evident from a review of the PCHA hearing transcript that the state court judge treated relator's allegations in support of his contention that he had been denied the effective assistance of counsel as a single claim. However, since under Pennsylvania law, post-trial motions are regarded as a part of the appellate process, *United States ex rel. Boyd v. Rundle*, 308 F.Supp. 184, 186, n. 1 (E.D.Pa.1969), we believe that Mandrier's claims concerning denial of the assistance of counsel following his conviction present a claim which is distinct from his contentions that he was denied effective counsel prior to and during his trial. While the right to counsel extends to both situations, *Gideon v. Wainwright, supra,* and *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), this distinction is necessary since, as we shall see, a violation of the right to counsel after conviction does not require that the conviction be overturned. Therefore, we shall consider the claims set forth in the petition by posing two

**5.** 28 U.S.C. § 2254(d) provides:

"In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the state or an officer or agent thereof were parties evidenced by a written finding, written opinion or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) * * *

(5) * * *

(6) that the applicant did not receive a full, fair and adequate hearing in the State court proceedings; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record."

Absent one or more of the above listed circumstances:

"The burden shall rest upon the applicant to establish by convincing evidence that the factual determination made by the State court was erroneous."

questions: Was relator deprived of the effective assistance of counsel (1) prior to or during trial, and (2) after conviction but within the time allowed for post-trial remedies?

### A. *Prior to and During Trial*

■ At his PCHA hearing and in the petition now before us, relator claims that he was denied effective assistance of counsel prior to and during trial. In support of that claim, Mandrier alleges: (1) that he did not see his appointed counsel until five minutes prior to his trial; (2) that his appointed counsel, a member of the Public Defender's trial staff, displayed a complete lack of interest and attention to Mandrier's case in that he failed to discuss the facts of the case or any possible witnesses or defenses which might be available; (3) that he was not advised of his right to remain silent or the consequences of testifying in his own behalf; and (4) that he was denied effective assistance of counsel by his counsel's failure to demur to the armed robbery charge at the conclusion of the government's case when no weapon had been produced.

### 1. *Pretrial Preparation.*

Relator's trial counsel, Donald Lewis, when called to testify at the PCHA hearing, did not specifically remember any of the details of his representation of Mandrier.[6] However, he testified:

"I always talked to the client until I was satisfied that they understood their position and I understood the facts. And if I needed more time, I asked the judge if I could have some more time."[7]

Lewis also testified that he never represented a client if he did not feel adequately prepared to do so. No continuance was requested at Mandrier's trial. While the state court judge did not make any specific finding as to when relator was first afforded an opportunity to consult with Lewis, it is clear that an investigator from the Public Defender's office had interviewed Mandrier well in advance of trial at the Allegheny County Jail. The investigator questioned Mandrier concerning the facts of the case and made a tape recording of the interview.

### 2. *The Right to Remain Silent.*

At the PCHA hearing Lewis was asked:

"Q. In your practice as an attorney and as former public defender, would you ever have put a defendant on the stand without advising him (of his right to remain silent) beforehand?

A. No sir.

Q. And what would that advice be? What would you tell him?

A. I did not always discuss this with the client before the trial began. Often times I would conduct that discussion as to whether or not the defendant would take the stand after appraising the Commonwealth's case and seeing what my position was and the position of my client. But I would never instruct my client to take the stand without him being aware that he had a choice as to whether or not he should take the stand. Now, I don't believe I made a practice of advising my clients that they had a right to remain silent. I indicated to them they had the choice whether or not they would take the stand, asking them that did they want to take the stand and testify in their own behalf. And if the defendant had a prior record . . . I would advise him in every case that if he does take the stand, his record will come out . . . And most of the time I advised my clients as to what my advice was whether they take the stand or should not take the stand."[8]

---

6. PCHA Tr. 38.
7. PCHA Tr. 34.
8. PCHA Tr. 35–36.

### 3. *Failure to demur.*

No mention of trial counsel's failure to demur to the charge of armed robbery upon the failure of the government to produce a weapon was made at the PCHA hearing. However, since it is not necessary to produce a weapon in order to convict an accused of armed robbery, we do not believe there was any need to inquire into counsel's trial tactics.

### 4. *Findings of the State Court.*

The state court judge denied PCHA relief, finding that Lewis' testimony was more credible than relator's on contested issues. We will not review the state court's findings on credibility.

We also believe that under the totality of the circumstances test enunciated in *Moore*, there is no support for Mandrier's contention that he was denied the effective assistance of counsel, i. e., counsel of normal competency, at trial. Mandrier acknowledged at the PCHA hearing that he was not prevented from telling the story as he wanted to have it told or from calling witnesses in his own behalf. Furthermore, since the state court judge determined that Lewis' testimony was more credible than relator's, we must assume that Lewis adhered to his normal methods of procedure in his representation of Mandrier. We believe that Mandrier's allegation regarding Lewis' failure to demur to the armed robbery charge is frivolous.

We have also reviewed the transcripts of Mandrier's trial and find nothing which would indicate that he was denied counsel of normal competence.

### B. *Following Trial*

The PCHA record establishes that relator's right to a direct appeal were not obstructed by state officials.

Mandrier's contention that he was denied the effective assistance of counsel following his conviction but during the time allotted for post-trial motions or direct appeal was also addressed at the PCHA hearing. Since the state courts have had an opportunity to review that contention, relator has satisfactorily exhausted his state remedies. See *United States ex rel. Geisler v. Walters*, 510 F.2d 887 (3rd Cir. 1975); *United States ex rel. Hayward v. Johnson*, 508 F.2d 322 (3rd Cir. 1975).

■ An examination of the trial records reveals that Mandrier was sentenced immediately after the court adjudged him guilty of armed robbery. He was then advised of his right to file post-trial motions and to a direct appeal in the event the post-trial motions were denied. The judge then asked Mandrier if he desired to file a motion for a new trial. When he responded that he did not, the judge said, "Very well then, the sentence shall be effective forthwith." [9]

Mandrier, citing *Commonwealth v. Blum*, 210 Pa.Super. 529, 233 A.2d 613 (1967), contends that the aforementioned procedure denied him due process of law in that the imposition of sentence immediately following conviction deprived him of adequate time to consider whether to file post-trial motions or to take a direct appeal without the effective assistance of counsel. In short, relator claims that he should not be bound by his action in informing the court that he did not intend to appeal since the decision was not knowingly and intelligently made with the assistance of counsel.

While some jurisdictions regard post-trial motions as a part of the trial package, Pennsylvania has chosen to view post-trial motions as a part of the appellate process, at least for constitutional purposes. *United States ex rel. Boyd v. Rundle, supra.* Under *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), as interpreted in *Commonwealth ex rel. Cunningham v. Maroney*, 421 Pa. 157, 159, 218 A.2d 811 (1966) and *Commonwealth v. Grillo*, 208 Pa.Super. 444, 448, 222 A.2d 427 (1966), a

---

**9.** See trial transcript 54–58. While relator has alleged that he was advised of his post-trial rights in the absence of counsel, it is apparent from the record that his appointed counsel was present during sentencing and the court's advice on relator's post-trial remedies.

convicted person is entitled to the effective assistance of counsel in deciding what post-trial actions to take, if any. See *United States ex rel. Boyd v. Rundle, supra.*

In *Commonwealth v. Blum, supra,* the court held that the time allotted for filing post-trial motions may not be shortened by the action of the trial judge. Thus, it was held in *Blum* that motions filed after sentencing but prior to expiration of the seven-day period in which to file post-trial motions were timely.

While Mandrier never filed any post-trial motions in this case, we understand his argument to be that the decision not to file such motions or to appeal was not an informed one because of a lack of the effective assistance of counsel.

In *United States ex rel. Boyd v. Rundle, supra,* the court concluded that *Blum* was inapplicable because the relator had expressed a desire for sentencing prior to the expiration of the time allowed for post-trial motions. In this case, on the other hand, Mandrier was sentenced immediately after conviction. But Mandrier was informed of the post-trial remedies available to him, and we believe that his decision not to pursue those post-trial remedies was an intelligent and knowing waiver of those rights under the facts presented here. In short, Mandrier, in the presence of his attorney, knowingly and intelligently waived his right to file post-trial motions and allowed the expiration of the time permitted. We, therefore, conclude that relator was not denied the effective assistance of counsel following imposition of sentence. Accordingly, his petition will be dismissed.

An appropriate order follows.