Leonard W. FERGUSON, Appellant,

v.

John S. GATHRIGHT, Superintendent Bland Correctional Farm, Appellee.

No. 72–1816.

United States Court of Appeals, Fourth Circuit.

Argued May 9, 1973.

Decided Oct. 8, 1973.

Barry Nakell, Chapel Hill, N. C. (court-appointed), for appellant.

Robert E. Shepherd, Jr., Asst. Atty. Gen. of Va. (Andrew P. Miller, Atty. Gen. of Va., on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and BUTZNER and RUSSELL, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The appellant, hereinafter referred to as the petitioner, was convicted of driving a motor vehicle after his driving license had been revoked under the provisions of the Virginia Habitual Offender Act.[1] He seeks *habeas* relief, arguing that the revocation of his driving license was invalid for failure of the State, at his revocation hearing, to furnish him counsel. After exhaustion of State remedies, he filed his federal action. The District Court denied relief and we affirm.

It would be sufficient to sustain the action of the District Court that the petitioner does not allege that he was indigent at the time of the revocation hearing. Absent such a claim, there can be no basis for appointed counsel under any circumstances. While he is appearing by appointed counsel on this appeal, he was represented at his trial in the State Court both by retained counsel and appointed counsel. If he could retain counsel at that point, it is not improbable that he was equally able to employ counsel at the time of his revocation hearing; at the least, he should negative such inference by an affirmative allegation of indigency. We would not, however, rest our decision on the failure of the petitioner to allege indigency. We are of the firm opinion that whether the petitioner was indigent or not, there was no obligation on the part of the State to furnish him counsel at his license revocation hearing.

A right to counsel must find its constitutional basis in either the commands of the Sixth Amendment[2] or

1. Sections 46.1–387.1 et seq., Virginia Code. Adopted in 1968, the Virginia Habitual Offender Act defines an habitual offender as one who has accumulated within a ten-year period three or more convictions of certain listed traffic offenses, or twelve or more convictions of certain other traffic offenses. When any person has accumulated sufficient convictions to meet the definition of habitual offender under the Act, the Commissioner of Motor Vehicles submits transcripts of such convictions to the Commonwealth Attorney, who then is directed to file an information charging the person with being an habitual offender. The court then files notice to show cause against the person involved, and, if at a hearing, it is found that the person noticed is the person who was convicted and that the requisite convictions are included, then the person is ordered to surrender his driver's license. He may not obtain a new license for ten years and until a court authorizes it. During the period his license is revoked and ordered surrendered, he is not entitled to drive a motor vehicle on the public highways and, if he does, he may be prosecuted and subjected to a prison sentence. Of course, at any trial charging him with the operation of a motor vehicle on the public highways after his driver's license had been revoked and ordered surrendered, he would be entitled to the appointment of counsel and in this case, counsel was appointed for the petitioner. It seems to be the rule that when so charged, the issue is whether the person charged did drive a motor vehicle without a driver's license after he had been adjudged an habitual offender and he is not entitled in that proceeding to attack collaterally the judgment in the revocation hearing. *See,* Franklin v. District of Columbia (D.C.App.1968) 248 A.2d 677; Michels v. Motor Vehicle Division (Colo. App.1973) 506 P.2d 1243, 1245.

For a general discussion of the Virginia Act, *see* Note, The Virginia Habitual Offender Act, 26 Wash. & Lee L.Rev. 271 (1969).

2. This amendment was made applicable to the States by the Fourteenth Amendment. Pointer v. Texas (1965) 380 U.S. 400, 403–406, 85 S.Ct. 1065, 13 L.Ed.2d 923; United States ex rel. Harris v. State of Illinois (7th Cir. 1972) 457 F.2d 191, cert. denied, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106.

the general guarantee of fundamental due process granted by the Fourteenth Amendment. The petitioner apparently rests his claim primarily on the Sixth Amendment. In pressing such claim, he is confronted at the outset with the fact that the right to counsel given by the Sixth Amendment extends only to criminal or quasi-criminal cases,[3] and proceedings for the revocation of a driver's license under the Virginia Habitual Offender Act have been authoritatively held to be a civil and not a criminal action.[4] The petitioner argues, however, that, because the revocation proceedings provide a basis for the subsequent prosecution for the crime of driving without a license or permit, they must be deemed an integral and essential part of that prosecution. Following this argument, he contends the license revocation proceedings, similar to a parole revocation proceeding, must be regarded as quasi-criminal and thus within the coverage of the Sixth Amendment. There is, though, a fatal flaw in this analogy. At the parole revocation, an adverse finding brings an immediate and automatic loss of liberty. No such result follows from a license revocation. In the latter situation, the defendant loses simply his right to operate a motor vehicle on the public highways; he suffers no loss of liberty or threat of incarceration.[5] He is not substantially different in condition from thousands of others, who, for

one reason or another, have been denied, or have suffered a loss of, a driving permit.[6] He comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands and to operate a motor vehicle on the public highway without a valid permit.

His situation, in those circumstances, is substantially similar in principle to that of the person, who, denied a renewal of his license because of impaired vision or other cause, drives a motor vehicle on the public highway. It is his subsequent defiance of the law, and only indirectly his revocation proceedings, that brings into play the criminal processes and places him in peril of imprisonment. Actually, he is in no substantially different situation legally from the status of one whose license as an insurance agent has been revoked and who subsequently has violated the law by continuing to act as an agent. It has been held that such agent was not entitled to counsel at his revocation hearing because the hearing is civil and not criminal and it does not become quasi-criminal simply because he may later be prosecuted for acting as an agent without a license.[7] Again, the defendant's situation in this regard cannot be differentiated on principle from that of the security salesman. He, it has been held, is not entitled under the Securities Act to appointed counsel in a proceeding to revoke his license to act as a

3. Hannah v. Larche (1960) 363 U.S. 420, 440, n. 16, 80 S.Ct. 1502, 4 L.Ed.2d 1307 reh. denied 364 U.S. 855, 81 S.Ct. 33, 5 L. Ed.2d 79; United States v. Zucker (1896) 161 U.S. 475, 480–481, 16 S.Ct. 641, 40 L. Ed. 777; Madera v. Board of Education of City of New York (2d Cir. 1967) 386 F.2d 778, 780, cert. denied 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284; Hullom v. Burrows (6th Cir. 1959) 266 F.2d 547, 548; Suess v. Pugh (D.C.W.Va.1965) 245 F.Supp. 661, 665.

4. Prichard v. Battle (1941) 178 Va. 455, 17 S.E.2d 393, 395; Huffman v. Commonwealth (1970) 210 Va. 530, 172 S.E.2d 788, 789; Virginia ex rel. Shifflett v. Cook (D.C.Va. 1971) 333 F.Supp. 718, 720, aff'd by memorandum decision dated October 2, 1971.

This accords with the general view taken of such proceedings. *See,* Commonwealth v. Harris (1939) 278 Ky. 218, 128 S.W.2d 579, 580– 581; Parker v. State Highway Department (1953) 224 S.C. 263, 78 S.E.2d 382.

5. *See,* Gottschalk v. Sueppel (1966) 258 Iowa 1173, 140 N.W.2d 866.

6. It is true that the penalty imposed, should he drive a motor vehicle after his license has been revoked, is more severe than in those instances where the flagrancy of offenses is not as aggravated. This is a matter, however, of degree and does not relate to the principle involved in the right to drive a motor vehicle on the public highways.

7. Woodham v. Williams (Fla.App.1968) 207 So.2d 320, 322; and Section 626.671, Fla. Stats.Ann.

security salesman [8] and this is true even though he may involve himself in the criminal net if he voluntarily chooses thereafter to act as a security salesman.[9] Again, his situation is analogous to the charitable foundation whose right to operate under state license bingo games was revoked without benefit of counsel. If the foundation, after that revocation, had operated bingo games, it would have been subject to the criminal gambling laws but that fact did not make the license revocation proceedings quasi-criminal so as to require appointment of counsel under the Sixth Amendment.[10]

The petitioner contends that the license revocation proceeding in this case is unique and differs from other situations because at the prosecution for driving without a license he is foreclosed from attacking collaterally the revocation itself, and, for this reason, the revocation proceeding and the criminal prosecution for driving without a license must be treated as a single criminal action in which at every critical stage—which will include the revocation hearing—he was entitled to counsel under the Sixth Amendment. It is by no means clear that this same situation does not prevail in the other license cases we have noted. But this argument, as applied specifically to a driving license revocation, was effectively answered in Franklin v. District of Columbia, *supra*, 248 A.2d at 679, where the Court said that the defendant "cannot now collaterally attack either the initial revocation or the subsequent denials of his applications for the reissuance of his permit in an effort to justify his unilateral decision that he was entitled to operate a motor vehicle without a valid permit."

◼ Nor will Chewning v. Cunningham (1962) 368 U.S. 443, 82 S.Ct. 498, 7 L.Ed.2d 442, involving the Virginia re- cidivist statute, which is cited by the petitioner, lend any support to his contentions. In the first place, as Justice Douglas points out in the majority opinion, a proceeding under the Virginia recidivist statute had been held by the Virginia Courts to be a "criminal" action (368 U.S. at 445, 82 S.Ct. 498). As a concededly "criminal" proceeding, it was within the express language of the Sixth Amendment. Further, the result of a judgment under the statute was an enhancement in the defendant's imprisonment. As we have already observed, no such result follows from an adjudication in the license revocation hearing authorized under the Habitual Offender Act. Moreover, Justice Harlan points out in his concurring opinion, the recidivist statute gives the defendant no notice prior to actual trial that the statute is to be invoked or the basis on which it is to be invoked, a circumstance which makes the appointment of counsel compelling. No such attack can be leveled at the Act under review; it expressly provides for prior notice. Under no circumstances then, can a proceeding under the Virginia recidivist statute be likened to one for revocation of a driver's license under the Habitual Offender Act.

◼ It remains to consider whether the appointment of counsel at the revocation hearing was required as a part of fundamental due process under the Fourteenth Amendment. It may be conceded that due process will demand that notice and opportunity to be heard be given to a defendant at the revocation hearing. Reese v. Kassab (3-judge Ct. Pa.1971) 334 F.Supp. 744, 746–747; *cf.*, however, Stauffer v. Weedlun (1972) 188 Neb. 105, 195 N.W.2d 218, appeal dismissed 409 U.S. 972, 93 S.Ct. 307, 34 L.Ed.2d 236, noted 52 Neb.L.Rev. 412 (1973). The Virginia statute meets this

---

8. Boruski v. Securities and Exchange Commission (2d Cir. 1965) 340 F.2d 991, 992, cert. denied 381 U.S. 943, 85 S.Ct. 1780, 14 L.Ed.2d 706; Nees v. Securities and Exchange Commission (9th Cir. 1969) 414 F.2d 211, 221.

9. Section 78ff, 15 U.S.C.A.

10. Cooley's Foundation v. Legalized Games Commission (1963) 78 N.J.Super. 128, 187 A.2d 731, 738, pet. for certification to the Supreme Court, Appellate Div. denied, 40 N.J. 212, 191 A.2d 57.

standard: It provides for both notice and opportunity to be heard on the part of the defendant. But due process does not go farther and require the appointment of counsel any more than it would require appointment in a proceeding to terminate welfare payments,[11] in child dependency proceedings,[12] in police disciplinary actions,[13] in garnishment of wages,[14] in ejectment proceedings involving public housing,[15] in prejudgment replevin,[16] in proceedings to purge the voting rolls,[17] or in expulsion from the United States Military Academy.[18] In all these proceedings, important civil rights—rights as important, in some instances more important, than the right to operate a motor vehicle—are involved. In none, however, is the appointment of counsel constitutionally mandated.[18a]

■ "Due process" is not a "rigid form" but is "a flexible concept," which depends for its application on a careful balancing of public as against private interest. Hagopian v. Knowlton, *supra*. What is involved here is a revocation hearing under an habitual offender act but what is determined in this context is equally applicable in principle to a revocation of a driver's license under the point-system, a system that has long been recognized and is in vogue in thirty-four states. Acting under either the habitual offender act or under the point-system, states revoke thousands of drivers' licenses, not as punishment but in a proper concern for public safety on the highways.[19] If counsel must be furnished indigents in all such proceedings, a procedure which was intended as an expeditious method of ridding the highways of dangerous drivers and of protecting the public would become an intolerable burden on the bar and a cumbersome procedure.[20] A proper balancing of public versus private interest would not justify such a requirement.

■ In summary, neither under fundamental due process nor under the Sixth Amendment can it be fairly concluded that appointment of counsel in a driving license revocation proceeding under the Virginia Habitual Offender Act is mandated.

The judgment of the District Court is affirmed.

Affirmed.

BUTZNER, Circuit Judge (dissenting):

In Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), the Court held that, absent a valid waiver, no person could be imprisoned for any offense unless he was represented by counsel at his trial. Specially concurring, Mr. Justice Powell urged that the right to counsel at trials for petty offenses should be determined on a case by case basis. As an example of the serious consequences arising out of the deprivation of property rights

---

11. Goldberg v. Kelly (1970) 397 U.S. 254, 270, 90 S.Ct. 1011, 25 L.Ed.2d 287.

12. Stanley v. Illinois (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551.

13. Grabinger v. Conlisk (D.C.Ill.1970) 320 F.Supp. 1213, 1218, aff'd (7 Cir.) 455 F.2d 490.

14. Sniadach v. Family Finance Corp. (1969) 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349.

15. Caulder v. Durham Housing Authority (4th Cir. 1970) 433 F.2d 998, 1003–1004, cert. denied 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539.

16. Fuentes v. Shevin (1972) 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556.

17. *See*, Pierce v. Superior Ct. (1934) 1 Cal. 2d 759, 37 P.2d 460, 96 A.L.R. 1020.

18. Hagopian v. Knowlton (2nd Cir. 1972) 470 F.2d 201, 211–212.

18a. Due process does not even make mandatory appointment of counsel in a *habeas* proceeding, where loss of liberty by reason of unconstitutional deprivations is the issue. *See* Burston v. Caldwell (5th Cir. 1973) 477 F.2d 996.

19. Virginia ex rel. Shifflett v. Cook, *supra* (333 F.Supp. at 720) ; Smith v. State (Md. 1973) 17 Md.App. 217, 301 A.2d 54, 64.

20. The scope of this problem in Virginia and the factual rationale behind the Act is well supplied by the statistics set forth in note 1, 26 Wash. & Lee L.Rev. 271, *supra*.

and interests when no jail sentence is involved, he wrote, "Losing one's driver's license is more serious for some individuals than a brief stay in jail." 407 U.S. at 48, 92 S.Ct. at 2018. The majority found it unnecessary to consider, on the record of that case, the situation to which Mr. Justice Powell had adverted. 407 U.S. at 37, 92 S.Ct. 2006. The problem, recognized but undecided in *Argersinger,* confronts us now.

Ferguson's operator's license was revoked for ten years at a hearing where he was not represented by counsel. While the Virginia act authorizing the revocation of a license speaks in terms of denying the privilege of operating a car, Va.Code Ann. § 46.1–387.1 (1968), it is now settled that the privilege to drive cannot be withdrawn without the procedural due process required by the fourteenth amendment. Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L. Ed.2d 90 (1971). *Bell,* however, does not supply a simplistic answer to the issue before us because due process does not always include the right to counsel.

Ferguson insists upon an unqualified right to representation at a revocation hearing; the state denies the existence of such a right altogether. Shunning both absolutes, I would adopt for revocation hearings the intermediate approach suggested by Mr. Justice Powell in *Argersinger* for petty offenses. I would not at this time, in the light of our present experience regarding license revocation proceedings, formulate a per se rule for the right to counsel at the revocation hearing. Frequently, the issues at this hearing will be very simple. The identity of the driver whose license is to be revoked is not questioned, and the fact that he has been convicted of specific previous offenses stands admitted. There is little to be done save a ministerial application of the statute. In these circumstances, the absence of counsel is not likely to cause prejudice.

On the other hand, I do not favor a per se rule against the right to counsel.

Without going into detail, it is apparent that some of the issues in a revocation proceeding may present complex legal and factual questions. *See* Note, The Virginia Habitual Offender Act, 26 Washington and Lee L.Rev. 271 (1969). To identify and present these issues effectively, either initially or on appeal, the assistance of counsel is necessary. In those exceptional circumstances when the fairness of the revocation proceeding will be impaired by the absence of counsel, I would hold that a person is entitled to representation unless he validly waives this right. *Cf.* Bearden v. South Carolina, 443 F.2d 1090, 1094 (4th Cir. 1971), cert. dismissed, 405 U.S. 972, 92 S.Ct. 1199, 31 L.Ed.2d 256 (1972); Jones v. Rivers, 338 F.2d 862, 879 (4th Cir. 1964) (Haynsworth, J., concurring specially).

Ferguson was convicted of driving after his license had been revoked, and he was sentenced to three years in prison. Although he was represented at that trial, his counsel could not question the issues determined at his uncounseled revocation hearing. Therefore, I would hold that—absent a valid waiver—a person cannot be constitutionally imprisoned when an essential element of his crime was *conclusively* adjudicated in a license revocation proceeding where he was prejudiced by the lack of counsel. *Cf.* Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961). Accordingly, I would remand the case to the district court with directions that it ascertain (1) whether Ferguson validly waived counsel at the revocation hearing, and (2) if not, whether he was prejudiced by the absence of counsel. If he is able to establish prejudice, the writ of habeas corpus should issue, and he should be discharged from custody. The order, however, should be stayed for a reasonable time to allow the state, if it be so advised, to retry him in a proceeding where he can collaterally challenge the revocation of his license. If he was not prejudiced, his petition should be denied.