319 S.E.2d 395

**STATE of West Virginia**

v.

**Timothy TENNANT.**

No. 15978.

Supreme Court of Appeals of West Virginia.

July 12, 1984.

**628**

Harry G. Deitzler, Prosecuting Atty. and Elizabeth A. Pyles, Asst. Prosecuting Atty., Parkersburg, for appellee.

Thomas P. Maroney, Charleston, for appellant.

MILLER, Justice:

Timothy Tennant appeals his conviction by a jury in the Circuit Court of Wood County, which found him guilty of leaving the scene of an accident, in violation of W.Va.Code, 17C–4–1. He was sentenced to one year in jail and fined $1,000. He assigns the following errors: (1) the verdict should not have been accepted after one juror, during the poll of the jury, said the evidence was insufficient; (2) no instruction was given requiring the State to prove that the defendant had knowledge of the accident and the resulting injury; (3) the defendant's motion for acquittal should have been granted; (4) a photograph entered into evidence was gruesome and unduly prejudiced the jury; and (5) the magis-

trate, who had tried the defendant prior to his appeal de novo to circuit court, should not have been allowed to testify. We conclude that the first assignment of error relating to the polling of the jury requires reversal.

On December 6, 1981, the defendant was driving his car on Route 68 in Wood County with two passengers, Brian Barnett and Randy Young. In a statement given by the defendant and introduced at trial, he claimed that he lost control of his vehicle when he was forced off the highway by an oncoming car. The defendant was thrown from his car which ultimately came to rest upside down in a field adjacent to the highway. The defendant stated that after the accident, the first thing he could remember was waking up on a gravel road that was near where the accident had occurred. After looking unsuccessfully for his car and his friends, the defendant yelled in an attempt to discover if anyone had been hurt. He testified that he heard someone call back, which he interpreted as meaning his friends were all right. He then ceased looking for his car and proceeded to Route 68.

The defendant was picked up by a passing motorist, who gave him a ride to the nearest lighted house, which belonged to a Mr. Young, who is no relation to Randy Young. At the defendant's request, Mr. Young telephoned the defendant's sister-in-law to inform her of the accident.

There were two main conflicts in the testimony of Mr. Young and the defendant at the trial. Mr. Young testified that it was the defendant who had arrived first at his house. The defendant claimed that one of his passengers, Randy Young, was already inside the house when he arrived. Mr. Young further claimed that the defendant told him not to call the police or an ambulance. The defendant stated that he had no recollection of this conversation.

The testimony does reveal that at some point after the accident, Randy Young joined the defendant in Mr. Young's house and that they did not notify the police of the accident. The defendant testified that during this time, Randy Young mentioned

that he had seen Brian Barnett, the other passenger, get into a car and that he was probably already home. The defendant's mother stated at trial that she heard Randy Young make a similar statement in the car after she and her husband had picked up the defendant and Randy Young to take them home.

Before going home, the defendant's parents traveled in the direction of the accident, attempting to find the wrecked automobile. Mr. Young, who also helped in the search using his own car, found the defendant's car. Pinned underneath the wrecked vehicle was the other passenger, Brian Barnett, who was dead. The defendant did not return to the scene of the accident until after the police and emergency vehicles had arrived.

## I.

The defendant urges this Court to reverse his conviction based on the actions taken by the trial court when the jury was polled. After the foreperson had announced the guilty verdict, defense counsel requested a poll of the jury, pursuant to Rule 31 of the West Virginia Rules of Criminal Procedure. The following colloquy ensued between the trial court and the third juror polled, Carleene Fawcett:[1]

"THE CLERK: Coristine Fawcit, is this your verdict?

**1.** The record is unclear as to the correct name of this third juror. In an order entered by the court on September 16, 1982, this juror's name is listed as "Carleene Fawcett," presumably a woman. However, in the transcript quoted above, the name is indicated as "Coristine Fawcit," and the transcript refers to this juror as "Mr. Fawcit." We have chosen to use the name listed in the court's order, which we hope is more accurate than the transcript of the proceedings.

We also note that following the poll of the jury, the defense counsel moved for a mistrial on the basis of the response from "Mrs. Youngblood," who was the juror polled just prior to Fawcett. Even though the defense counsel cited the wrong juror as the basis for his mistrial motion, we believe the error was properly preserved as Carleene Fawcett was the only juror who expressed any reservations on the jury poll. The motion was made promptly after the poll and before the jury dispersed.

"MR. FAWCIT: Guilty as what the evidence was presented.

"THE COURT: Is this your verdict?

"MR. FAWCIT: As of the evidence that was presented.

"THE COURT: Based upon the evidence, is this your verdict? Based upon the evidence as presented, is this your verdict?

"MR. FAWCIT: Well, I don't think we really did have enough evidence, but I will say yes.

"THE COURT: I read the verdict as signed by your Foreperson in open Court. I just read it. The question now: Is this your verdict?

"MR. FAWCIT: Yes, it is.

"THE COURT: All right."

Our Rule 31, which is modeled after Rule 31 of the Federal Rules of Criminal Procedure, mandates that the verdict in a criminal case be unanimous[2] and provides a procedure for ensuring that the verdict is unanimous, i.e., the jury poll. Rule 31(d) provides: *"Poll of Jury.*—When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

**2.** Rule 31(a) provides: *"Return.*—The verdict shall be unanimous. It shall be returned by the jury to the judge in open court." Because of the clarity of Rule 31(a), we do not find it necessary to discuss whether our Constitution requires the verdict of a jury in a criminal case to be unanimous. For United States Supreme Court cases, see *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979); *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). A general discussion of the unanimity issue can be found in Morano, *Historical Development of the Interrelationship of Unanimous Verdicts and Reasonable Doubt,* 10 Val.U.L.Rev. 223 (1976); Silverstein, *Rebuttal: An Alternate Viewpoint on the Relationship of Unanimous Verdicts and Reasonable Doubt,* 11 Val.U.L.Rev. 29 (1976); Comment, *Waiver of Jury Unanimity—Some Doubts About Reasonable Doubt,* 21 U.Chi.L.Rev. 438 (1954); Annot., 97 A.L.R.3d 1253 (1980).

■ We have not had occasion to consider this rule.[3] Federal cases have held that the language of Rule 31(d) of the Federal Rules of Criminal Procedure requires that when a juror indicates in a poll that he either disagrees with the verdict or expresses reservations about it, the trial court must either direct the jury to retire for further deliberations or discharge the jury. Although the rule does not explicitly so state, courts have also recognized that appropriate neutral questions may be asked of the juror to clarify any apparent confusion, provided the questions are not coercive. *See, e.g., United States v. McCoy*, 429 F.2d 739 (D.C.Cir.1970); *Sincox v. United States*, 571 F.2d 876 (5th Cir.1978); *United States v. Duke*, 527 F.2d 386 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976); *United States v. Edwards*, 469 F.2d 1362 (5th Cir. 1972); *Amos v. United States*, 496 F.2d 1269 (8th Cir.), *cert. denied*, 419 U.S. 896, 95 S.Ct. 174, 42 L.Ed.2d 140 (1974); *United States v. Freedson*, 608 F.2d 739 (9th Cir. 1979); *United States v. Lopez*, 581 F.2d 1338 (9th Cir.1978); *United States v. Morris*, 612 F.2d 483 (10th Cir.1979); *United States v. Smith*, 562 F.2d 619 (10th Cir. 1977); *United States v. Spitz*, 696 F.2d 916 (11th Cir.1983); *United States v. Musto*, 540 F.Supp. 318, 64 A.L.R.Fed. 832 (D.N.J. 1982); 3 C. Wright, Federal Practice and Procedure § 517 (2d ed. 1982); Annot., 25 A.L.R.3d 1149 (1969).[4] We adopt this procedure for our Rule 31(d).[5]

The federal case most factually similar is *Sincox*, in which a juror during the poll announced that his verdict was guilty with reasonable doubt. The Fifth Circuit held that under these facts, the trial court had only two options when the juror stated he had reasonable doubt: either direct the jury to retire for further deliberations or discharge the jury. Since the juror did not appear to be confused, the Fifth Circuit held that there was no third option, i.e., asking questions to eliminate any confusion suffered by the juror. *See also United States v. Sexton*, 456 F.2d 961 (5th Cir. 1972).

The reason for allowing only a very limited inquiry on an individual poll of jurors in a criminal case is to prevent the possibility of coercing the juror to conform to the verdict. Courts have recognized that the chief purpose behind an individual poll of jurors is to enable a juror to express any reservation he may have about the verdict free from the pressure of his fellow jurors.[6]

The ability to have a final forum to determine whether each juror assents to the verdict is particularly important in light of the general rule that forbids post-trial impeachment of a jury's verdict by affidavit or other testimony of individual jurors.

---

**3.** We have held that a jury verdict composed of eleven jurors was invalid, *State v. Wyndham*, 80 W.Va. 482, 92 S.E. 687 (1917), as was a verdict where the jury was composed of thirteen jurors, *State v. Hudkins*, 35 W.Va. 247, 13 S.E. 367 (1891). Those cases dealt with the composition of a criminal jury, which under Section 14 of Article III of the West Virginia Constitution "shall be by a jury of twelve men." The unanimity issue was not involved.

**4.** State courts have adopted this same procedure either under their general law or their counterpart to Rule 31(d). *E.g., In re Chapman*, 64 Cal.App.3d 806, 134 Cal.Rptr. 760 (1976); *Morgan v. United States*, 363 A.2d 999 (D.C.1976), *cert. denied*, 431 U.S. 919, 97 S.Ct. 2187, 53 L.Ed.2d 231 (1977); *Hudson v. State*, 157 Ga. App. 71, 276 S.E.2d 122 (1981); *People v. Kellogg*, 77 Ill.2d 524, 34 Ill.Dec. 163, 397 N.E.2d 835 (1979); *Commonwealth v. Hebert*, 379 Mass. 752, 400 N.E.2d 851 (1980); *Morgan v. State*, 370 So.2d 231 (Miss.1979); *Commonwealth v. Hall*, 267 Pa.Super. 204, 406 A.2d 765 (1979); *People v. Garvin*, 90 A.D.2d 682, 456 N.Y.S.2d 30 (1982).

**5.** There is no counterpart to Rule 31(d) in the West Virginia Rules of Civil Procedure. The rule in civil cases may not be as restrictive. *See, e.g., State ex rel. Rufus v. Easley*, 129 W.Va. 410, 40 S.E.2d 827 (1946), *overruled on other grounds, State ex rel. Toryak v. Spagnuolo*, 170 W.Va. 234, 292 S.E.2d 654 (1982); *State ex rel. Neill v. Nutter*, 99 W.Va. 146, 128 S.E. 142 (1925).

**6.** In 3 C. Wright, Federal Practice and Procedure § 517 at 32–33 (2d ed. 1982), the following summary, based upon federal cases, is given concerning the reasons for a jury poll: "The purpose of this procedure, required by Rule 31(d), is to ascertain with certainty that each of the jurors approves of the verdict as returned, and that no one has been coerced or induced to agree to a verdict to which he has not fully assented." (Footnote omitted)

*See State v. Scotchel,* 168 W.Va. 545, 285 S.E.2d 384 (1981).

In the present case, we note that the jury had begun deliberating on the afternoon of August 24, 1982. After deliberating for one and one-half hours, they were sent home for the evening. They reconvened the next day and that morning requested that the instructions be reread, which was done. Later that day, they announced that they could not arrive at a unanimous verdict, but were asked by the court to continue their deliberations. At the end of that day, they still had not arrived at a verdict and were sent home. The following day, they reconvened and after deliberating for two and one-half hours announced the verdict.

■ We believe the juror's statements clearly suggested that she did not believe there was sufficient evidence to warrant a conviction. The court's repeated inquiry as to whether this was her verdict was coercive, particularly in light of the lengthy deliberations. If the court had stated that the verdict could not be accepted because it was not unanimous and had the jury retire for further deliberations, there would have been no error. As a number of the foregoing cases point out, the repeated questioning of a juror may have the effect of compelling the juror to surrender views conscientiously entertained and undercuts the unanimity rule. For the foregoing reasons, the case must be reversed.

## II.

We address the defendant's instructional error, even though it does not appear to have been properly preserved, because as a result of our reversal, this case may be retried. The defendant argues that before a conviction can be obtained under W.Va. Code, 17C–4–1 and 3, the jury must be instructed that the defendant must have had knowledge of the accident and the resulting injury to be guilty of leaving the scene of an accident.[7]

We have only decided two cases under our so-called "hit-and-run" statute or its antecedent. In Syllabus Point 1 of *State v. Masters,* 106 W.Va. 46, 144 S.E. 718 (1928), we held: "Ordinarily it is sufficient to allege an offense in the language of the statute. An indictment under section 97, Chapter 43, Code, need not allege that the defendant 'knowingly' had an accident, since knowledge is not made a part of the offense." Our holding in *Masters* was simply that an indictment under a similarly worded antecedent to W.Va.Code, 17C–4–1, was sufficient because it followed the language of the statute, which did not specifically require knowledge as an element of the crime.

In a civil case, *Brumfield v. Wofford,* 143 W.Va. 332, 102 S.E.2d 103 (1958), we questioned some of the language in *Masters* which indicated that knowledge was not an element of the crime of leaving the scene of an accident and limited our holding in *Masters* to its facts, namely that an indictment or an arrest warrant would be sufficient without alleging knowledge. Thus, it is clear that neither *Masters* nor *Brumfield* dealt directly with the issue of whether knowledge of the accident and the resulting injury must be established to sup-

---

7. W.Va.Code, 17C–4–1(a), states:
   "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section three [§ 17C–4–3] of this article. Every such stop shall be made without obstructing traffic more than is necessary."
   W.Va.Code, 17C–4–3, provides:
   "The driver of any vehicle involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupant of or person attending any vehicle collided with and shall render to any person injured in such accident reasonable assistance, including the carrying, or the making arrangements for the carrying of such person to a physician, surgeon, or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carrying is requested by the injured person."

port a criminal conviction of leaving the scene of an accident.

W.Va.Code, 17C–4–1 and 3, and the "hit-and-run" statutes in a large number of other states, are modeled after § 10–104 of the Uniform Vehicle Code. *See* Traffic Laws Ann. § 10–104, at 80–92 (1972). A majority of jurisdictions that have considered similarly worded "hit-and-run" statutes have held that knowledge of the accident must be read into the statute. *See Touchstone v. State*, 42 Ala.App. 141, 155 So.2d 349 (1963); *Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978); *State v. Porras*, 125 Ariz. 490, 610 P.2d 1051 (1980); *People v. Holford*, 63 Cal.2d 74, 403 P.2d 423, 45 Cal.Rptr. 167 (1965) (in bank); *Haire v. State*, 155 So.2d 1 (Fla.App.1963); *State v. Parish*, 79 Idaho 75, 310 P.2d 1082 (1957); *People v. Nunn*, 77 Ill.2d 243, 32 Ill.Dec. 914, 396 N.E.2d 27 (1979); *State v. Miller*, 308 N.W.2d 4 (Iowa 1981); *State v. Snell*, 177 Neb. 396, 128 N.W.2d 823 (1964); *State v. Fearing*, 304 N.C. 471, 284 S.E.2d 487 (1981); *State v. Corpuz*, 49 Or.App. 811, 621 P.2d 604 (1980); *Commonwealth v. Kauffman*, 470 A.2d 634 (Pa.Super.Ct. 1983); *State v. Szarek*, 433 A.2d 193 (R.I. 1981); *State v. Minkel*, 89 S.D. 144, 230 N.W.2d 233 (1975); *Goss v. State*, 582 S.W.2d 782 (Tex.Ct.Crim.App.1979); *Herchenbach v. Commonwealth*, 185 Va. 217, 38 S.E.2d 328 (1946); *State v. Sidway*, 139 Vt. 480, 431 A.2d 1237 (1981); *State v. Martin*, 73 Wash.2d 616, 440 P.2d 429 (1968), *cert. denied*, 393 U.S. 1081, 89 S.Ct. 855, 21 L.Ed.2d 773 (1969); Annot., 23 A.L. R.3d 497 (1969). A commonly given reason for this interpretation is summarized in *Kimoktoak*, 584 P.2d at 31, where the Alaska Supreme Court concluded: "[W]e cannot believe that the legislature could have intended that persons who unknowingly fail to stop and render assistance could be subject to serious criminal penalties." Similarly, the Virginia Supreme Court in *Herchenbach*, 185 Va. at 220, 38 S.E.2d at 329, stated:

> "The duty imposed upon the driver of a vehicle involved in an accident is not passive. It requires positive, affirmative action; that is, to stop and give the aid and information specified.

> "How can a person perform these affirmative acts unless he knows that his vehicle has struck a person or an object? Knowledge necessarily is an essential element of the crime."

In addition to requiring knowledge of the accident to be proven, numerous jurisdictions also hold that knowledge of the resulting injury is also an element of the offense under statutes similar to W.Va. Code, 17C–4–1. *See, e.g., Touchstone v. State, supra; Kimoktoak v. State, supra; State v. Porras, supra; People v. Holford, supra; Haire v. State, supra; State v. Parish, supra; People v. Nunn, supra; State v. Miller, supra; State v. Snell, supra; State v. Fearing, supra; State v. Szarek, supra; State v. Minkel, supra; State v. Sidway, supra; State v. Martin, supra.* However, actual knowledge of the injury is not required. It is sufficient for the State to prove that in view of the nature of the accident, one could reasonably anticipate that it resulted in injury or death to a person. The leading case espousing this position is *Holford*, 403 P.2d at 427, in which the California Supreme Court explained:

> "[T]he driver who leaves the scene of the accident seldom possesses actual knowledge of injury; by leaving the scene he forecloses any opportunity to acquire such actual knowledge. Hence a requirement of actual knowledge of injury would realistically render the [hit-and-run] statute useless. We therefore believe that criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person." (Footnote omitted)

█ We are persuaded by the weight of authority that W.Va.Code, 17C–4–1, must be read to require the State to prove that the driver charged with leaving the scene of an accident knew of the accident and the resulting injury or death or reasonably should have known of the injury or death from the nature of the accident. Any contrary indication made in *Masters* is hereby

expressly overruled. Knowledge of the accident and the resulting injury are essential elements of the crime of leaving the scene of an accident that must be established by the State.

### III.

### A.

The defendant asserts that there was insufficient evidence to support the verdict and particularly points to the State's failure to prove that under W.Va.Code, 17C–4–3, he failed to offer reasonable assistance. We note initially that W.Va.Code, 17C–4–1(a), which incorporates by reference W.Va.Code, 17C–4–3, covers two general situations.[8] The first situation involves the duty to stop where there is "an accident resulting in injury to or death of any person." W.Va.Code, 17C–4–1(a). Upon proof of the failure to stop with knowledge of an accident, and that in light of the accident injury or death might reasonably be expected and did result, the failure to stop offense has been established. This conclusion is corroborated by the penalty language in W.Va.Code, 17C–4–1(b), which is stated in the alternative: "Any person failing to stop *or* to comply with said requirements." [9] (Emphasis added)

The latter phrase "to comply with said requirements" covers the second situation, which involves W.Va.Code, 17C–4–3, and the duty to give information and render aid.[10] This statute is designed to cover situations similar to the present case, where the vehicle is stopped either voluntarily or involuntarily as a result of the accident. The focal inquiry under W.Va. Code, 17C–4–3, in this case is the returning to the scene of the accident and rendering reasonable assistance to the victim.[11]

■ The initial issue in the present case was whether the defendant knew or should have known that the accident was such that it might reasonably be expected that one or more of his passengers was either injured or dead. From the circumstances of the accident, we believe this was a jury issue. Furthermore, once this issue was decided, the jury had to consider whether the defendant remained at the scene of the accident and rendered reasonable assistance. The evidence on this point was that after calling out and hearing someone respond, the defendant secured a ride to Mr. Young's house, without returning to the scene of the accident to investigate what reasonable assistance may have been warranted. The jury could certainly have concluded that this was insufficient to constitute rendering "reasonable assistance" under W.Va.Code, 17C–4–3. We, therefore, decline to hold that as a matter of law there was insufficient evidence on this point. *See* Syllabus Point 1, *State v. Starkey,* 161 W.Va. 517, 244 S.E.2d 219 (1978).[12]

### B.

■ The defendant also claims that one of the State's photographs, showing a portion of the deceased passenger's body under the car, was gruesome and, therefore, should not have been admitted under Sylla-

---

**8.** For the text of W.Va.Code, 17C–4–1(a), *see* note 7, *supra.*

**9.** W.Va.Code, 17C–4–1(b), provides:

"Any person failing to stop or to comply with said requirements under such circumstances shall upon conviction be punished by imprisonment for not less than thirty days nor more than one year or by fine of not less than one hundred dollars nor more than five thousand dollars, or by both such fine and imprisonment."

**10.** W.Va.Code, 17C–4–3, is set out in note 7, *supra.*

**11.** Although not specifically raised, it would appear that one purpose of the rendering reason-

able assistance requirement is to require the involved driver to check the condition of the injured victim to see if reasonable assistance is needed.

**12.** Syllabus Point 1 of *Starkey* states:

"In a criminal case, a verdict of guilt will not be set aside on the ground that it is contrary to the evidence, where the state's evidence is sufficient to convince impartial minds of the guilt of the defendant beyond a reasonable doubt. The evidence is to be viewed in the light most favorable to the prosecution. To warrant interference with a verdict of guilt on the ground of insufficiency of evidence, the court must be convinced that the evidence was manifestly inadequate and that consequent injustice has been done."

bus Point 2 of *State v. Headley,* 168 W.Va. 138, 282 S.E.2d 872 (1981), and Syllabus Point 1 of *State v. Rowe,* 163 W.Va. 593, 259 S.E.2d 26 (1979).[13] We said in Syllabus Point 6 of *State v. Buck,* 170 W.Va. 428, 294 S.E.2d 281 (1982), that:

"In order for photographs to come within our gruesome photograph rule established in *State v. Rowe,* [163 W.Va. 593], 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome."

*See also State v. Audia,* 301 S.E.2d 199, *cert. denied,* 464 U.S. 934, 104 S.Ct. 338, 78 L.Ed.2d 307 (1983); *State v. Mullins,* 171 W.Va. 542, 301 S.E.2d 173 (1983).

The photograph is a black-and-white snapshot and was taken some distance from the car. The body is fully clothed and there is no sign of blood or other physical trauma. We do not believe that the photograph was gruesome.

### C.

The defendant claims that it was error to permit the magistrate who presided over his initial trial to testify in order to impeach the defendant. The defendant testified that he suffered fractured ribs and an injury to his hand at the time of the accident. The magistrate testified that he could not recall the defendant making such a statement at the earlier proceeding. We discussed the impeachment issue at some length in *State v. Richey,* 171 W.Va. 342, 298 S.E.2d 879, 885–87 (1982). We question whether this was valid impeachment testimony. However, the issue can easily be avoided on retrial by not calling the magistrate.[14]

For the reasons set forth, we reverse the judgment of the Circuit Court of Wood County and remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.

---

**13.** Syllabus Point 1 of *Rowe* states:

"Gruesome photographs are not *per se* inadmissible, but they must have something more than probative value, because by the preliminary finding that they are gruesome, they are presumed to have a prejudicial and inflammatory effect on a jury against a defendant. The State must show that they are of essential evidentiary value to its case."

**14.** The defendant's final assignment of error is that he was not present when the jury was brought in from its deliberations in order either to be sent to lunch or to go home for the evening. As proof of this claim, the defendant argues that the transcript fails to acknowledge his presence. We need not address this issue because the case is reversed on other grounds. *See generally State v. Tiller,* 168 W.Va. 522, 285 S.E.2d 371 (1981).