376 S.E.2d 618

**STATE of West Virginia**

v.

**Willard COLE.**

**No. 18448.**

Supreme Court of Appeals of West Virginia.

Dec. 21, 1988.

---

George F. Fordham, Clarksburg, for appellant.

Charles G. Brown, III, Attorney General, for appellee.

MILLER, Justice:

Willard Cole appeals his conviction by a jury in the Circuit Court of Taylor County of driving with a revoked license in violation of W.Va.Code, 17B–4–3(b) (1986). He was sentenced to six months in the Taylor County jail and was fined $300. The defendant asserts that the trial court erred: (1) by denying his motion for a judgment of acquittal on the grounds that no evidence was introduced to show that he was either represented by counsel or knowingly and intelligently waived that right on his prior conviction of driving under the influence; (2) by refusing to grant a continuance although a defense witness was not present; (3) by refusing to allow impeachment of the testimony of the arresting officer; (4) by refusing a jury instruction he offered; and (5) by accepting the verdict of guilty after one of the jurors, during the polling of the jury, expressed doubt as to the guilt of the defendant. We find that the final assignment of error relating to the polling of the jury requires reversal.

### I.

During the early morning hours of February 22, 1987, Officer Lewis Stevens of the Grafton Police Department was parked at the intersection of Route 50 and Route 119 observing traffic. Also parked at this intersection was Deputy Richard F. Jones of the Taylor County Sheriff's Department. The officers observed a blue and white pick-up truck make an illegal turn into the parking lot of a Union 76 gas station. Officer Stevens immediately followed the truck, which had stalled in the meantime. Before Officer Stevens could get out of his cruiser, the occupant of the truck, the defendant, exited the vehicle, lifted the truck's hood, and appeared to be working on the engine.

Officer Stevens asked the defendant for his driver's license, registration, and proof of insurance. The defendant told the officer that he did not own the truck and did not have a driver's license. He also said that he had not been driving the truck, which he claimed had been parked for two days. However, when Officer Stevens touched the engine, it was warm.

Officer Stevens radioed the dispatcher to determine the ownership of the truck and to confirm that the defendant had a suspended driver's license. After learning that the defendant's driver's license had been revoked, the officer placed him under arrest pursuant to W.Va.Code, 17B–4–3(b) (1986).

On May 5, 1987, the defendant was tried for driving on a revoked license. Initially, the State entered into evidence the administrative order revoking the defendant's driver's license for driving under the influence of alcohol. Next, the State presented the testimony of the two police officers who had witnessed the defendant driving on the night in question. The defendant testified that on the morning of February 22, 1987, he was walking through the parking lot on his way home from a local bar when a police officer yelled at him to freeze. The jury found the defendant guilty. It is from this conviction that the defendant appeals.

### II.

The defendant argues that because the record is silent as to whether he was represented by counsel at the administrative revocation hearing, it was reversible error to later convict him for driving on a revoked driver's license pursuant to W.Va. Code, 17B–4–3(b) (1986). As authority for this proposition, he cites *State v. Armstrong*, 175 W.Va. 381, 332 S.E.2d 837 (1985), as controlling. In Syllabus Point 1 of *Armstrong*, we held:

"Under the sixth amendment of the federal constitution and article III, section 14 of the West Virginia Constitution, unless an individual convicted of a misdemeanor was represented by counsel or knowingly and intelligently waived the right to counsel, such prior conviction may not be used to enhance a sentence of imprisonment for a subsequent offense."

In *Armstrong*, the defendant was indicted for a third offense DUI, a felony under W.Va.Code, 17C–5–2(i). Prior to trial, the defendant filed a "motion to dismiss the indictment, or, in the alternative, to strike prior convictions," alleging that he had not been afforded counsel and did not properly waive his right to counsel before pleading guilty in the two prior DUI convictions. This motion was denied, but on appeal we held that the defendant had the right to challenge the constitutionality of his prior DUI convictions which were the predicate for the enhanced sentence.

■ We find that the holding in *Armstrong* does not apply in this case. The key element of a violation of W.Va.Code, 17B–4–3(b) (1986), is driving on a license which has been previously revoked for driving under the influence of alcohol or a controlled substance.[1] Such a revocation of an individual's driver's license is an administrative proceeding under W.Va.Code, 17C–5A–2. Indeed, whether the defendant was convicted of the misdemeanor crime of driving under the influence is immaterial to a conviction for violation of W.Va.Code, 17B–4–3(b) (1986). *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978).

■ We decline the defendant's invitation to extend the holding in *Armstrong* to situations where an individual's license has been revoked by the Department of Motor Vehicles and he is then prosecuted for driving on the revoked license. We have made it clear, in prior cases, that the right to counsel extends only to criminal causes that involve the possibility of imprisonment. As we said in Syllabus Point 1 of *State v. Blosser* 158 W.Va. 164, 207 S.E.2d 186 (1974):

"West Virginia Constitution, Article III, Section 14, guarantees that, absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial."

*See also Bullet v. Staggs*, 162 W.Va. 199, 250 S.E.2d 38 (1978).

*Blosser* and *Bullet* thus support the conclusion that an administrative proceeding to revoke a driver's license due to an arrest for DUI is not criminal, and does not implicate the right to counsel. This point was discussed in *Jordan v. Roberts, supra.* Other jurisdictions have concluded that an administrative revocation of a driver's license is not a criminal proceeding. *E.g., Ferguson v. Gathright*, 485 F.2d 504 (4th Cir.1973); *Whorley v. Brillhart*, 373 F.Supp. 83 (E.D.Va.1974); *Abbot v. District of Columbia*, 154 A.2d 362 (D.C.1959); *State v. Bell*, 182 Ga.App. 860, 357 S.E.2d 596 (1987); *Davis v. State*, 174 Ind.App. 433, 367 N.E.2d 1163 (1977); *Gottschalk v. Sueppel*, 258 Iowa 1173, 140 N.W.2d 866 (1966); *State v. Boos*, 232 Kan. 864, 659 P.2d 224 (1983), *cert. denied*, 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1374 (1983); *Seders v. Powell*, 298 N.C. 453, 259 S.E.2d 544 (1979); *Robertson v. State ex rel. Lester*, 501 P.2d 1099 (Okla.1972); *State v. Rhoades*, 54 Or.App. 254, 634 P.2d 806 (1981); *Wolf v. State Dep't of Motor Vehicles*, 27 Wash.App. 214, 616 P.2d 688 (1980).

Nor is it material to this issue that an individual who drives on his revoked license may subsequently be prosecuted for the crime of driving on a suspended license. A similar argument was made and rejected in *Ferguson v. Gathright, supra.* In *Ferguson*, the defendant argued that because a revocation proceeding provided a basis for his subsequent prosecution of driving without a license or permit, the revocation hearing must be deemed an integral and essen-

---

1. W.Va.Code, 17B–4–3(b) (1986), provides, in pertinent part:

"Any person who drives a motor vehicle on any public highway of this state at a time when his privilege so to do has been lawfully revoked for driving under the influence of alcohol, controlled substances or other drugs, or while having an alcoholic concentration in his blood of ten hundredths of one percent or more, by weight, or for refusing to take a secondary chemical test of blood alcohol content shall, for the first offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail for six months and in addition to such mandatory jail sentence, shall be fined not less than one hundred dollars nor more than five hundred dollars[.]"

tial part of the prosecution. *Ferguson*, 485 F.2d at 506. Moreover, the defendant argued that the license revocation proceeding was similar to a parole revocation proceeding. Therefore, it must be regarded as quasi-criminal and thus within the scope of the Sixth Amendment's right to appointed counsel, but the court disagreed:

"There is, though, a fatal flaw in this analogy. At the parole revocation, an adverse finding brings an immediate and automatic loss of liberty. No such result follows from a license revocation. In the latter situation, the defendant loses simply his right to operate a motor vehicle on the public highways; he suffers no loss of liberty or threat of incarceration.... He comes under the threat of incarceration *only if* he subsequently determines to take the law into his own hands and to operate a motor vehicle on a public highway without a valid permit." 485 F.2d at 506. (Footnote omitted; emphasis in original).

█ If there were irregularities in the revocation proceeding, the defendant should have pursued an appeal to the circuit court as provided by W.Va.Code, 17C–5A–2. The Court in *Abbot, supra*, stated: "He had no right to continue to operate a vehicle until apprehended and then make a belated attack on the revocation order." 154 A.2d at 363. The defendant "was obligated to seek judicial remedy for an alleged wrongful denial of his license to drive ... and he cannot now collaterally attack the ... initial revocation[.]" *Franklin v. District of Columbia*, 248 A.2d 677, 679 (D.C.App.1968); *State v. Bell, supra; cf. Poulos v. New Hampshire*, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105 (1953).

Consequently, we conclude that a defendant who is charged under W.Va.Code, 17B–4–3(b), with driving a motor vehicle on a revoked or suspended operator's license cannot defeat this charge by claiming that he did not have appointed counsel at the administrative revocation hearing.

### III.

█ The defendant also assigns as error the denial of his motion for a continuance based upon the absence of one of his witnesses. We find this contention meritless. We have held in Syllabus Point 4 of *State v. McCallister*, 178 W.Va. 77, 357 S.E.2d 759 (1987):

"A party moving for a continuance due to the unavailability of a witness must show: (1) the materiality and importance of the witness to the issues to be tried; (2) due diligence in an attempt to procure the attendance of the witness; (3) that a good possibility exists that the testimony will be secured at some later date; and (4) that the postponement would not be likely to cause an unreasonable delay or disruption in the orderly process of justice."

In the instant matter, the defendant failed to show these necessary prerequisites.

█ Prior to the empaneling of the jury, defense counsel met with the judge and prosecutor and orally moved for a continuance based upon the absence of one of the defendant's witnesses, his brother. Defense counsel argued that this witness would testify that he was with the defendant at the bar "Big Daddy's" until 12:00 midnight on the evening the defendant was arrested. He would further testify that when he offered the defendant a ride home, the defendant told him he would either hitchhike or find a ride with someone else. The defendant was not arrested until 2:15 a.m. The testimony of this witness is immaterial to the issue of whether the defendant was driving on a revoked license at 2:15 a.m. We stated in *State v. Hatfield*, 169 W.Va. 191, 211, 286 S.E.2d 402, 414 (1982), that a "continuance cannot ordinarily be obtained for the absence of a nonmaterial witness."

█ Not only was the witness immaterial to the issue being tried, it appears that the defendant did not use due diligence in attempting to procure his brother's attendance. Although the defendant subpoenaed the witness, the subpoena was sent to Terra Alta, West Virginia, while the witness resided in the Commonwealth of Virginia.

In view of the foregoing, we find that the trial court's ruling denying the motion for continuance was not error.

## IV.

The defendant next alleges that the trial court committed reversible error by refusing to allow defense counsel an opportunity to impeach the arresting officer. Defense counsel began questioning the arresting officer on why he had resigned from the Grafton police department. When he inquired about this subject, the prosecutor objected and the trial court sustained the objection.

■■■ We note that the defendant never vouched the record with the information he sought to elicit; thus, the court was never informed of the possible materiality of this evidence. It is well settled that, to assert the exclusion of evidence as error, the record must affirmatively show what the evidence was. As we stated in Syllabus Point 4 of *State v. Carr*, 65 W.Va. 81, 63 S.E. 766 (1909):

"In order to make exclusion of offered evidence available as a ground of error in the appellate court, the record must be so prepared in the court below as to show what the excluded evidence was. There is no presumption as to what answer a witness would have made to a question propounded."

*See also State v. Moore*, 166 W.Va. 97, 273 S.E.2d 821 (1980); *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956). We, therefore, conclude that this point of error was not properly preserved and decline to address it.

## V.

The defendant also contends that it was reversible error for the trial court to refuse to give Instruction No. 5 tendered on his behalf. This instruction provided:

"The Court instructs the jury that if, after due consideration of the evidence and consultation with his fellows, a juror has a reasonable doubt as to the guilt of the accused in this case, it is his duty not to surrender his own convictions simply because other jurors are of different opinions."

We stated in *State v. Taft*, 144 W.Va. 704, 708, 110 S.E.2d 727, 732 (1959), that "[w]hile the law contemplates the free and deliberate concurrence of all jurors as a prerequisite of a verdict, this Court has expressed its disapproval of instructions couched in language tending to foster disagreement among or obduracy on the part of the jurors." We further noted in *Riddle v. Baltimore & Ohio R.R. Co.*, 137 W.Va. 733, 762, 73 S.E.2d 793, 806 (1952), that unanimity instructions "embod[y] principles so generally understood by jurors and so fully covered by the oath of the juror, that refusal to give the instruction would rarely, if ever, constitute prejudicial error." (Citations omitted). *See also State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976); *Robertson v. Hobson*, 114 W.Va. 236, 171 S.E. 745 (1933).

■■■ This latter proposition was codified in Syllabus Point 8 of *Browder, Inc. v. County Court of Webster County*, 145 W.Va. 696, 116 S.E.2d 867 (1960), where we held:

"It is not error for a court to refuse to grant an instruction on the unanimity of the jury."

We find that the trial court did not err in refusing to give defendant's Instruction No. 5, and the fact that the jury was fully instructed as to the burden of proof, fortifies us in this conclusion. *Riddle v. Baltimore & Ohio R.R. Co.*, 137 W.Va. at 756, 73 S.E.2d at 806.

## VI.

Finally, the defendant argues that this Court should reverse his conviction based on the actions taken by the trial court during the polling of the jury. After the jury foreman had announced the guilty verdict, defense counsel requested that the jurors be individually polled pursuant to Rule 31(d) of the West Virginia Rules of Criminal Procedure. During the poll, the following exchange occurred between the trial judge and Juror No. 5:

"THE COURT: Was that your verdict then and is that your verdict now?

"JUROR: I said yes, but in the back of my mind, I still have doubts both ways.

"THE COURT: Do you conclude with the verdict of guilty?

"JUROR: Yes, I told them yes.

"THE COURT: You voted for a verdict of guilty?

"JUROR: Yes.

"THE COURT: Are you still sticking with that verdict of guilty?

"JUROR: Yes, but in the back of my mind, I think there's something there.

"THE COURT: Have you been satisfied beyond a reasonable doubt and voted for that verdict?

"JUROR: Yes."

Rule 31(a), W.Va.R.Cr.P.,[2] expressly requires that a verdict in a criminal case be unanimous. Rule 31(d), W.Va.R.Cr.P., provides for polling of the jury as to the procedural mechanism to ensure that the verdict is unanimous: *"Poll of Jury.—* When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

We have previously considered the ramifications of Rule 31(d) in *State v. Tennant,* 173 W.Va. 627, 319 S.E.2d 395 (1984).[3] In *Tennant,* as in this case, after the jury had returned a verdict of guilty, defense counsel requested that the jurors be individually polled. During the polling, one juror initially expressed reservations regarding the defendant's guilt. However, upon further questioning by the clerk, the juror stated that his verdict was guilty.[4]

We reversed the conviction, and summarized the proper jury polling procedure in Syllabus Point 2:

"Federal cases have held that the language of Rule 31(d) of the Federal Rules of Criminal Procedure requires that when a juror indicates in a poll that he either disagrees with the verdict or expresses reservations about it, the trial court must either direct the jury to retire for further deliberations or discharge the jury. Although the rule does not explicitly so state, courts have also recognized that appropriate neutral questions may be asked of the juror to clarify any apparent confusion, provided the questions are not coercive. We adopt this procedure for Rule 31(d) of the West Virginia Rules of Criminal Procedure."

In the case at hand, Juror No. 5 expressed some initial doubt as to the verdict. As permitted by *Tennant,* the court questioned the juror in an attempt to clarify any possible confusion. The juror's answers to those questions did not dispel the existence of doubt. To the contrary, Juror No. 5 expressed reservations about the guilty verdict on three occasions.

Once it became apparent that the verdict was not unanimous, the court was duty bound to either direct the jury to deliberate further or to declare a mistrial. No objection or motion by the defendant

---

**2.** Rule 31(a), W.Va.R.Cr.P., provides: *"Return.—* The verdict shall be unanimous. It shall be returned by the jury to the judge in open court." Rule 31(a) of the Federal Rules of Criminal Procedure is identical to its West Virginia counterpart.

**3.** Rule 31(d) of the Federal Rules of Criminal Procedure is identical to Rule 31(d) of the West Virginia Rules of Criminal Procedure.

**4.** The record in *Tennant,* 173 W.Va. at 629, 319 S.E.2d at 398, indicates that the following colloquy ensued between the trial court and one of the jurors:

"'THE CLERK: Coristine Fawcit, is this your verdict?

'MR. FAWCIT: Guilty as what the evidence was presented.

'THE COURT: Is this your verdict?

'MR. FAWCIT: As of the evidence that was presented.

'THE COURT: Based upon the evidence, is this your verdict? Based upon the evidence as presented, is this your verdict?

'MR. FAWCIT: Well, I don't think we really did have enough evidence, but I will say yes.

'THE COURT: I read the verdict as signed by your Foreperson in open Court. I just read it. The question now: Is this your verdict?

'MR. FAWCIT: Yes, it is.

'THE COURT: All right.'"

**420**

was necessary. *E.g., Sincox v. United States,* 571 F.2d 876 (5th Cir.1978); *United States v. Edwards,* 469 F.2d 1362 (5th Cir. 1972); *United States v. Musto,* 540 F.Supp. 318 (D.N.J.1982); *Rhodes v. State,* 290 Ark. 60, 716 S.W.2d 758 (1986); *Hinton v. State,* 223 Ga. 174, 154 S.E.2d 246 (1967); *see generally* 8A J. Moore, Moore's Federal Practice ¶ 31.07 (1987).

We thus conclude that the court's acceptance of the guilty verdict, when unanimity was clearly absent, constituted reversible error. The judgment of the Circuit Court of Taylor County is, therefore, reversed and the case is remanded.

REVERSED AND REMANDED.